H. Norman STONE,
Petitioner–Appellant,
Cross–Appellee,

v.

R.G. GODBEHERE, Sheriff, Maricopa County; Attorney General of the State of Arizona, Respondents–Appellees, Cross–Appellant.

Nos. 89–15158, 89–15159.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 13, 1989.*

Decided Feb. 1, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

H. Norman Stone, Phoenix, Ariz., for petitioner-appellant, cross-appellee.

J. David Rich, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees, cross-appellant.

Before FARRIS, PREGERSON and RYMER, Circuit Judges.

FARRIS, Circuit Judge:

## ISSUES

I. Was the injunction under which Stone was cited for contempt unconstitutionally vague?

II. Does the ex parte issuance of an injunction prohibiting the transfer of community property violate due process where the injunction is issued without notice, showing of cause, or judicial participation?

III. Did the district court err in finding that Stone was subjected to double jeopardy by the trial court's issuance of a second sentencing order that restricted the interpretation of the first sentence, but was issued before Stone commenced serving prison time?

IV. Did Stone exhaust his state remedies by submitting the double jeopardy issue only to the Arizona Supreme Court on discretionary review?

## FACTS

Norman Stone appeals from the district court's partial denial of his petition for habeas corpus. Stone seeks relief from his conviction for contempt of court. The contempt order was issued as a result of the

Arizona Superior Court's finding that Stone had violated a court injunction. The injunction was issued pursuant to Ariz.Rev. Stat.Ann. § 25–315(A) when Stone's wife, Rachel, filed for dissolution of their marriage. Under the terms of the injunction, both Stone and his wife were prohibited from transferring or encumbering any community property, except for "necessities of life" or in the "ordinary course of business," pending the dissolution proceedings.

On April 6, 1988, the Superior Court found Stone guilty of three counts of criminal contempt and three counts of civil contempt. Stone was sentenced to three six-month prison terms, to be served consecutively, for three violations of the injunction: 1) a $38,011 withdrawal from a pension fund for the purchase of a California residence, 2) a $5,000 withdrawal, and 3) an $11,000 withdrawal.

The Arizona Supreme Court vacated the consecutive sentences because the total sentence exceeded six months without the benefit of a jury trial. The Superior Court resentenced Stone to three *concurrent* six month terms. On November 9, 1988, the Superior Court amended that sentence to eliminate the statutory "two for one" credit that would permit early release. Stone thereafter commenced serving his sentence, and on November 29, 1988, was denied his petition for habeas corpus by the Arizona Supreme Court.

■ Stone sought a writ of habeas corpus from the federal district court, naming the Maricopa County Sheriff and the Arizona Attorney General as parties. The district court found that the amended sentence violated double jeopardy, but dismissed Stone's claims that the injunction violated due process and was unconstitutionally vague. Consequently, Stone was given "two-for-one" credit, reducing his punishment to a three month sentence. Stone appeals on the vagueness and due

process claims, and the State cross appeals, arguing failure to exhaust state remedies and error in voiding the amended sentence.[1]

## DISCUSSION

### I. UNCONSTITUTIONAL VAGUENESS OF THE INJUNCTION

■ Stone argues that Arizona statute § 25–315(A), and the injunction which repeats the words of the statute verbatim, were unconstitutionally vague. The prohibitory language states:

The above named ... shall not:

A. Transfer, encumber, conceal, sell or otherwise dispose of the joint common or community property of the parties except in the usual course of business or for the necessities of life, without the written consent of both parties or the permission of the Court.

Stone contends that the phrases "necessities of life" and "ordinary course of business" failed to give him sufficient notice that his transfers and expenditures were prohibited by the injunction.

The language used in the injunction conveyed "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States*, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312–13, 1 L.Ed.2d 1498 (1957) (statutory vagueness). First, as to the transfer of funds to purchase the California residence, Stone claims that the increased value of the property proves that no attempt to dissipate the community assets occurred. However, Stone cannot deny that the transfer placed the property beyond the jurisdiction of the Superior Court. Because prohibiting such out-of-state transfers was one of the purposes of the statute, *Lonergan v. Strom*, 145 Ariz. 195, 700 P.2d 893 (Ct.App.1985), Stone should have been on notice that a substan-

---

1. Although the State filed a notice of appeal only as to the district court's denial of a new trial, this error will generally not be construed to limit the appealable issues where no prejudice to the other party is alleged. *See* FRAP 3(c); *Smith v. Atlas Off Shore Boat Service*, 653

F.2d 1057, 1059 n. 1 (5th Cir.1981) (notice appealing district court's denial of reconsideration did not limit argument of issues presented in original order where briefs clearly addressed the issues and no prejudice shown).

tial transfer of funds out of Arizona could not be made without prior approval. This is particularly true where the purpose of the out-of-state transfer is not within the core meaning of either exception.

The remaining two contempt citations for the $11,000 and $5,000 transfers create a more difficult question. Stone claims that the two transfers were spent on attorney's fees and personal expenses, respectively. The Superior Court record does not reveal a determination on how these transfers were spent. We find that Stone was on notice that the injunction prohibited his transfer of funds. Stone could resolve any question by a request to the court for permission to transfer. He made no request to the court. We therefore find no error in the contempt citation.

## II. DEPRIVATION OF DUE PROCESS

■ Stone next argues that the injunction statute violates due process because it takes property without prior hearing, judicial supervision, or immediate post-taking protections. Stone's claim is one of procedural, not substantive due process. *Cf. Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir.1989) (substantive due process claim requires proof that the extent of interference with property rights was irrational or arbitrary). He does not challenge the state's right to make the determination that marital property rights should be restricted during the pendency of a dissolution action. Stone relies on *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny, in challenging the constitutionality of the injunction statute. His reliance is misplaced. We recognize that due process mandates some form of notice and hearing in order to deprive a property interest that is more than de minimis. *Fuentes v. Shevin*, 407 U.S. 67, 90 n. 21, 92 S.Ct. 1983, 1999 n. 21, 32 L.Ed.2d 556 (1972). The nature of the procedure required depends on a balance of: 1) the private interest at stake, 2) the risk of erroneous deprivation, and 3) the governmental interest and burden imposed by greater procedure. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ Under the *Mathews* balancing test, Stone was not deprived of procedural due process. A restraining order prohibiting the alienation of property does impose a significant injury. *United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir.1985). However, Stone's private interest is reduced, because in the domestic setting a spouse's property interest in community property is limited by his duties to the co-owner spouse. *See Sample v. Sample*, 152 Ariz. 239, 241, 731 P.2d 604, 606 (Ct. App.1986). Countering this interest is the interest of the state in preventing waste or dissipation of marital assets.

The deciding factor justifying the lack of traditional procedural protections in this case is that the risk of erroneous deprivation is minimal or nonexistent. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) ("The function of legal process ... is to minimize the risk of erroneous decisions ... the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error"). Where the state has authorized a mandatory deprivation conditioned on an easily determined event, the minor risk of clerical error in that determination does not justify pre-deprivation hearings. *Dixon v. Love*, 431 U.S. 105, 113, 97 S.Ct. 1723, 1727–28, 52 L.Ed.2d 172 (1977) (mandatory suspension of drivers license upon third conviction requires no pre-deprivation hearing).

The Arizona statute is an automatic mandatory deprivation of property involved in a divorce proceeding. Stone claims that his property interests are inadequately protected without an immediate hearing to determine the "scope and necessity of the injunction." *Id.* 442 U.S. at 23–24, 99 S.Ct. at 2111–12. But the statute does not restrict the property right only when an injunction is "necessary"; it restricts the property right in *every* divorce case. Ariz. Rev.Stat.Ann. § 25–315(A). Stone presents no evidence or allegation that there is any risk that the wrong parties will be named, or that an injunction could issue where no petition for divorce had been filed. Be-

cause the risk of erroneous deprivation is minimal or nonexistent, the existing procedure satisfies due process. The due process claim was properly denied.

## III. AUGMENTATION OF THE CONTEMPT SENTENCES

In its cross-appeal the State challenges the district court's finding that Stone was subjected to double jeopardy when the Arizona Superior Court amended the original contempt sentence to state that no "two-for-one" credit[2] could be given. The State recognizes that due process standards (and double jeopardy) apply to contempt convictions but contends that the amended sentence merely clarified the first. The district court held that the amended sentence, which was issued months after the first, unconstitutionally augmented the punishment because the prior order would have permitted the early release.

■■■ The double jeopardy clause prohibits additions to criminal sentences in a subsequent proceeding where the legitimate expectation of finality has attached to the sentence. *United States v. DiFrancesco,* 449 U.S. 117, 139, 101 S.Ct. 426, 438–39, 66 L.Ed.2d 328 (1980). The existence of the second sentence reflects the Superior Court's belief that Stone might be given early release under the original sentence. Because the Sheriff subsequently interpreted the first sentence to allow early release, the amended sentence did increase the punishment. A sentencing judge may ordinarily increase the sentence, provided the defendant has not yet begun serving that sentence. *DiFrancesco,* 449 U.S. at 134, 101 S.Ct. at 435–36. *See United States v. Arrellano–Rios,* 799 F.2d 520, 523 (9th Cir.1986) (finality does not attach when sentence is pronounced). Expectations are not violated because the pronouncement of a sentence "has never carried the finality that attaches to acquittal." *DiFrancesco,* 449 U.S. at 133, 101 S.Ct. at 435. Because Stone had not yet begun serving his contempt sentences when the order was altered, the amended sentence

would normally be permissible under *DiFrancesco.*

Arizona law, however, created the expectation of finality at the time of pronouncement. Unlike federal courts, Arizona Superior Courts have no authority to modify a lawful sentence once orally pronounced. *State v. Suniga,* 145 Ariz. 389, 393, 701 P.2d 1197, 1201 (Ct.App.1985); *See State v. Falkner,* 112 Ariz. 372, 373–74, 542 P.2d 404, 405–06 (1975) (Superior Court has no jurisdiction to modify sentence except to correct an "unlawful" or unlawfully imposed sentence). Because an Arizona Superior Court sentence is ordinarily final upon pronouncement, an expectation of finality does attach at that time. This breach of a legitimate expectation of finality violates the double jeopardy clause. *United States v. Andersson,* 813 F.2d 1450, 1461 (9th Cir.1987).

## IV. EXHAUSTION OF STATE REMEDIES

■■■ The State contends that Stone failed to exhaust his state remedies because he raised the double jeopardy issue only to the Arizona Supreme Court on its discretionary review. Exhaustion is required by 18 U.S.C. § 2254(b). However, the exhaustion requirement is a matter of comity, not jurisdiction. *Lindquist v. Gardner,* 770 F.2d 876, 877 n. 1 (9th Cir. 1985). Where, as here, the state failed to raise an exhaustion argument before the district court, we may consider it waived if the interests of comity, federalism and justice would be served. *Granberry v. Greer,* 481 U.S. 129, 134–35, 107 S.Ct. 1671, 1675–76, 95 L.Ed.2d 119 (1987).

These interests are furthered, and so we consider the exhaustion issue waived. The district court has already held a full trial, and the state has not adequately justified its failure to raise the issue at that time. Moreover, reversal of the district court would force Stone to return to prison on a sentence that a federal court has declared unconstitutional. The interests of federalism and comity do not require such an injustice.

---

**2.** Two-for-one credit permits a Sheriff to release    a prisoner early for good behavior.

**1136**

We affirm the district court's grant of the writ on the double jeopardy question. We also affirm the district court's denial of the writ on the vagueness and due process claims.

AFFIRMED.