**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE RODRIGO ZERMENO-GOMEZ; GUSTAVO HERNANDEZ-GUTIERREZ; MARTIN RIOS-ARIAS, | No. 17-71867 <br><br> D.C. Nos. <br> 2:17-mj-09200-ESW-1 <br> 2:17-cr-00803-DLR-1 <br> 2:15-cr-00280-SMM-1 |
| RODRIGO ZERMENO-GOMEZ; GUSTAVO HERNANDEZ-GUTIERREZ; MARTIN RIOS-ARIAS, <br> *Petitioners*, <br><br> v. <br><br> UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, PHOENIX, <br> *Respondent*, <br><br> UNITED STATES OF AMERICA, <br> *Real Party in Interest.* | ORDER |

Petition for Writ of Mandamus
Edward C. Voss, Magistrate Judge, Presiding
Douglas L. Rayes, District Judge, Presiding
Stephen M. McNamee, District Judge, Presiding

Submitted to Motions Panel August 15, 2017
San Francisco, California

Filed August 25, 2017

Before:  Alfred T. Goodwin, Alex Kozinski, and
Marsha S. Berzon, Circuit Judges.

Order

## SUMMARY[*]

**Mandamus**

The panel granted a petition for a writ of mandamus ordering the judges within the District of Arizona to comply with this court's decision in *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017) (en banc), which held that before placing a defendant in shackles, the district court must "make an individualized decision that a compelling government purpose would be served and that shackles are the least restrictive means for maintaining security and order."

The petitioners are three defendants whose requests to be unshackled were denied based on the stayed mandate in *Sanchez-Gomez*.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the petitioners satisfied the requirements for mandamus relief set forth in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977). The panel explained that whether a published decision of this court is binding on lower courts within the circuit, notwithstanding a stay of the mandate, is plainly an issue of major importance to the administration of the district courts. The panel held that petitioners have demonstrated that the judges within the District of Arizona who found that *Sanchez-Gomez* was not binding on them committed clear error, as this court has unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so. The panel explained that the remaining *Bauman* factors also weigh in favor of granting relief.

## COUNSEL

Daniel L. Kaplan, Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioners.

Krissa M. Lanham and Dominic W. Lanza, Assistant United States Attorneys; Elizabeth A. Strange, Acting United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Real Party in Interest.

## **ORDER**

On May 31, 2017, this court held in *United States v. Sanchez-Gomez*, 859 F.3d 649, 661 (9th Cir. 2017) (en banc) that before placing a defendant in shackles, the district court must "make an individualized decision that a compelling government purpose would be served and that shackles are the least restrictive means for maintaining security and order." About two weeks later, this court granted the government's motion to stay the mandate, so the government could seek full en banc review or file a petition for a writ of certiorari.

Citing the stay of the mandate, several judges within the District of Arizona found that *Sanchez-Gomez* was not binding on them and accordingly denied defendants' requests to be unshackled. A court-established committee tasked with providing a recommendation on how to comply with *Sanchez-Gomez* likewise concluded that no action was required until the mandate issued.

The petitioners in this case are three defendants whose requests to be unshackled were denied based on the stayed mandate in *Sanchez-Gomez*. On June 26, 2017, petitioners filed this petition for a writ of mandamus asking that we order the District Court for the District of Arizona to comply with our decision in *Sanchez-Gomez*. That same date, petitioners also filed an emergency motion for injunctive relief, which the government opposed.

We granted petitioners' emergency motion on July 14, 2017, stating, "Pending further order of the court, respondent United States District Court for the District of Arizona is ordered to comply with our decision in *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017) (en banc)." Three weeks later, the Chief Judge for the District of Arizona

issued a memorandum establishing a district-wide procedure for determining, prior to a defendant's appearance in court, whether and how the defendant should be restrained.  The memorandum instructs judges that a defendant should not be restrained absent a showing that restraint is necessary.

We now hold that petitioners have satisfied the requirements for mandamus relief.  We grant their petition and order the judges within the District of Arizona to comply with our decision in *Sanchez-Gomez*.

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  We have authority to issue a supervisory or advisory writ in "cases involving questions of law of major importance to the administration of the district courts."  *In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1307 (9th Cir. 1982).

The issue of whether a published decision of this court is binding on lower courts within the circuit, notwithstanding a stay of the mandate, is plainly an issue of "major importance to the administration of the district courts."  *Id*.  The exercise of our authority is therefore appropriate in this matter.  *See United States v. U.S. Dist. Ct.*, 334 U.S. 258, 264 (1948) ("It is, indeed, a high function of mandamus to keep a lower tribunal from interposing unauthorized obstructions to enforcement of a judgment of a higher court.").[1]

---

[1] The parties do not contest, and so we assume for purposes of this decision only, that the separate issuance of a mandate is appropriate in a case such as this one.  *But see Ellis v. U.S. Dist. Ct.*, 360 F.3d 1022 (9th Cir. 2004) (en banc).

When considering whether to grant mandamus relief, this court considers the five factors enumerated in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977):

> (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) (citing *Bauman*, 557 F.2d at 654–55). "While all the factors need not be present to issue the writ," the absence of clear error is fatal to a request for mandamus relief. *In re U.S.*, 791 F.3d 945, 955 (9th Cir. 2015).

We begin our analysis by examining whether there is clear error, given the significance of the inquiry. The clear error standard is deferential, "and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* Notwithstanding this high threshold, petitioners have demonstrated that the judges within the District of Arizona who found that *Sanchez-Gomez* was not binding on them committed clear error.

Under our "law of the circuit doctrine," a published decision of this court constitutes binding authority "which 'must be followed unless and until overruled by a body

competent to do so.'" *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)). In recognition of this principle, we have held that a stay of the mandate does not "destroy the finality of an appellate court's judgment," and that a published decision is "final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn by the court." *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983); *see also United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995) ("The government first urges us to ignore *Armstrong* since we have stayed the mandate to allow filing of a petition for certiorari; this we will not do, as *Armstrong* is the law of this circuit"); *cf. Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority").

Despite this clear authority, the government alleges, and several judges within the District of Arizona found, that there are contrary cases within this circuit suggesting that a decision is not binding on lower courts until the mandate has issued. They are mistaken, as the cited cases have nothing to do with when a holding becomes law of the circuit.

For example, in *United States v. Ruiz*, 935 F.2d 1033 (9th Cir. 1991), a criminal defendant argued that the district court was required to sentence him in accordance with a decision that was in effect at the time of his plea agreement, but had been withdrawn by the time of sentencing. *Id*. at 1034. On appeal, this court rejected the defendant's argument, explaining that the decision "was not yet fixed as settled Ninth Circuit law." *Id*. at 1037. To the extent the defendant

based his willingness to enter into the plea agreement on a decision that was subject to withdrawal, we noted that the defendant took a "gamble, but one that did not pay off as he had hoped." *Id*.

In *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009), this court issued an amended opinion that affirmed a district court order denying relief in a civil rights lawsuit. While the original opinion had the effect of reversing the district court order by a two-to-one vote, one of the judges in the majority died before the mandate issued. His replacement on the panel joined the previously dissenting judge to form a new majority. The new majority noted, "[u]ntil the mandate has issued, opinions can be, and regularly are, amended or withdrawn, by the merits panel at the request of the parties pursuant to a petition for panel rehearing, in response to an internal memorandum from another member of the court . . . or *sua sponte* by the panel itself." *Id*. at 878–79. Accordingly, "the prior majority's holding in this case may or may not have survived until the mandate issued, but it was certainly not yet enshrined as a binding construction of the Constitution" at the time the original panel member died. *Id*. at 879.

These cases stand for the unremarkable proposition that, until the mandate has issued, a published decision by a panel of this court is subject to modification, withdrawal, or reversal. *See Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194, 1203 (9th Cir. 2013) ("[W]e have explained that a 'court of appeals may modify or revoke its judgment at any time prior to issuance of the mandate, sua sponte or by motion of the parties.'") (quoting *United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990)); *see also* Fed. R. App. P. 41(c) advisory committee's note to 1998 amendment ("A court of appeals' judgment or order is not

final until issuance of the mandate; at that time the parties' obligations become fixed."). They have no bearing on the distinct issue presented here: whether a published decision that has not been modified or withdrawn is binding on lower courts within the circuit. On that point, we have unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so. *Gonzalez*, 677 F.3d at 389 n.4.**[2]**

Not only does it constitute clear error for a district court to disregard a published opinion of this court, but the remaining *Bauman* factors also weigh in favor of granting mandamus relief. *See Bauman*, 557 F.2d 654–55. Because this case concerns a practice among several judges throughout the District of Arizona that is unrelated to defendants' individual criminal cases, "[t]here is no danger that the writ will supplant the normal appeals process." *Sanchez-Gomez*, 859 F.3d at 656. Next, this case involves an oft-repeated error and a persistent disregard of this court's authority. Without intervention, several judges within the District of Arizona may erroneously continue to believe themselves free to ignore a controlling decision of this court, so long as the mandate has not issued. Finally, this case raises new and important problems, namely, a fundamental misunderstanding of when a decision of this court becomes binding on lower courts.

Noting that the Chief Judge has issued a memorandum instituting a district-wide procedure intended to meet the requirements of *Sanchez-Gomez*, the government asks that

---

**[2]** Such a "body" may, of course, include a panel of this court. *See, e.g.*, *Ruiz*, 935 F.2d at 1037; *Carter*, 558 F.3d at 879; *Nat. Res. Def. Council*, 725 F.3d at 1203.

we deny this petition or dismiss it as moot. However, the memorandum was issued after we granted petitioners' emergency motion for injunctive relief and explicitly ordered the district court to comply with our decision in *Sanchez-Gomez* pending our decision on the petition for writ of mandamus. If we decline to grant this petition and terminate the injunction, the Chief Judge could decide to withdraw the memorandum. This case therefore presents a live controversy that warrants the exercise of our supervisory authority. *See Sanchez-Gomez*, 859 F.3d at 659.

The judges within the District of Arizona are ordered to comply with this court's decision in *Sanchez-Gomez*. Accordingly, the petition for a writ of mandamus is granted.

**GRANTED.**